IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RONALD DAVID MORGAN,

Petitioner,

v.

CATHY A. JESS,

Respondent.

OPINION and ORDER

19-cv-796-jdp

Ronald David Morgan, appearing pro se, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his state court conviction from Marathon County case number 13CF747 for multiple sex offenses against a 15-year old child. Morgan contends that his trial counsel was ineffective by failing to object to certain hearsay evidence introduced at trial. The petition is briefed and ready for decision. For the reasons set forth below, I conclude that Morgan has failed to show a denial of his constitutional rights. Accordingly, I will deny the petition.

BACKGROUND

The following facts are drawn from the petition and state court records provided by Morgan and the state.

In Marathon County case number 2013CF747, Morgan was charged with three counts of second-degree sexual assault of a child under 16 years of age and one count of exposing a child's genitals. The underlying accusations accused Morgan of having sexual contact and oral intercourse with a 15-year old male, A.G.D., at an overnight gathering of family and friends. Morgan pleaded not guilty and proceeded to a jury trial.

The victim, A.D.G., was the state's primary witness. A.D.G. testified that Morgan had sexually assaulted him while they were both at a family gathering. After A.D.G. testified, A.D.G.'s mother, stepfather, and a sexual assault nurse testified about what A.D.G. had told them about the assault a few days after it occurred. Their testimony was consistent with A.D.G.'s live testimony. A.D.G.'s mother also testified that, according to A.D.G., Morgan had stated during the assault that, "It's been a long time since I've touched or felt hairy thighs like this." A.D.G. told his mother that he thought "this" had "happened before." On the morning of trial, defense counsel filed a motion in limine to preclude the hearsay testimony of the mother and nurse, but the court did not rule on the motion before the mother and nurse testified. Defense counsel did not object during the mother's testimony or the nurse's testimony.

The state also played a one-hour videotaped statement that A.D.G. had made to a forensic interviewer at a child advocacy center a few days after the assault. A.D.G.'s recorded account was consistent with his live testimony at trial. Defense counsel filed a handwritten motion in limine to preclude the recorded videotaped statement on the morning of trial, but counsel later withdrew the motion and did not object to the videotaped statement during trial.

The state also called a police officer who had conducted a recorded interview of Morgan. The recorded interview was played for the jury. During the interview, Morgan stated that he had been drinking heavily on the night in question, and that he could not remember the night very well. Dkt. 15-15, at 26. He acknowledged that he was up late with A.D.G., after everyone else had gone to sleep. *Id.*, at 14. He admitted that he had touched A.D.G.'s legs, joked with him, and talked with him about homosexuality. *Id.*, at 8, 14, 18. Morgan did not admit that he had kissed A.D.G., rubbed his chest, rubbed his penis, or performed oral sex on him. He

said he was "horrified" by the accusations, that he had never thought about doing anything like that, and that it was not something he would have done. *Id.*, at 19, 23. But Morgan also stated that he would not accuse A.D.G. of lying about the incident, and that A.D.G. would "remember the night better" than Morgan would because Morgan had been so intoxicated. *Id.*, at 24–29. Morgan stated that the incident could have happened, but that he "hoped" it did not happen, and that he "hop[ed] to God [he] wouldn't have done those kinds of acts." *Id.* Morgan told the police officer that he would apologize to the victim and his family, even though he did not remember the incident, because he would not call the victim a liar. *Id.*, at 42.

Morgan did not testify at trial, and his attorney did not present any defense witnesses. During closing arguments, defense counsel emphasized the lack of DNA evidence and the lack of eyewitnesses. Defense counsel also observed that there were "strange dynamics" in the A.D.G.'s family and observed that the A.D.G.'s mother had been mad at A.D.G. in the days following the assault. The jury found Morgan guilty on all counts, and Morgan was sentenced to six years of imprisonment and nine years of extended supervision.

Morgan, through counsel, filed a postconviction motion challenging the effectiveness of his trial counsel. He argued that counsel should have objected on hearsay grounds to A.D.G.'s videotaped statement and the mother's testimony about A.D.G.'s statements. The circuit court denied Morgan's motion after a hearing, and the court of appeals affirmed. The court of appeals concluded that regardless whether trial counsel was deficient, Morgan did not suffer prejudice from the introduction of the mother's testimony or A.D.G.'s recorded statement with the forensic interviewer. The Wisconsin Supreme Court denied Morgan's petition for review on November 13, 2018.

3

Morgan filed his federal habeas petition on September 25, 2019. He raised four claims in his petition, but he conceded that he exhausted only his claim regarding counsel's failure to object to hearsay evidence. I gave Morgan the options of proceeding solely with his exhausted claim, or of dismissing his entire petition without prejudice so that he could pursue his unexhausted claims in state court. Morgan responded that he wanted to proceed with his exhausted claim only, Dkt. 5, so I directed the state to respond to the exhausted claim. In his reply brief in support of his petition, Morgan makes several arguments that are related to his unexhausted claims. Because Morgan abandoned those claims, and because they are unexhausted, I have not considered those arguments.

ANALYSIS

To prevail on his petition, Morgan must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c), 2254(a). Because the Wisconsin Court of Appeals addressed the merits of Morgan's claims when it affirmed the denial of his postconviction motion, this court's review is subject to the deferential standard of review under 28 U.S.C. § 2254(d). Under § 2254(d)(1), Morgan must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." A decision is contrary to clearly established federal law if it applies a rule that is different from governing law set forth in Supreme Court cases. *Bailey v. Lemke*, 735 F.3d 945, 949–50 (7th Cir. 2013). A decision involves an unreasonable application of Supreme Court precedent if the decision identifies the correct governing rule of law, but it applies the law unreasonably to the facts of the case. *Id*.

Alternatively, Morgan can obtain relief if he shows that the state court's adjudication of his claims was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). But again, the federal court owes deference to the state court. The underlying state court findings of fact are presumed correct unless the petitioner comes forth with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014).

Morgan contends that his trial counsel was ineffective by failing to object to hearsay statements of the victim's mother and the videotaped forensic interview of the victim.[1] Because there were no eyewitnesses and no DNA evidence, the state's case depended entirely on A.D.G.'s credibility. Morgan argues that the hearsay evidence unfairly bolstered A.D.G.'s credibility, because it was cumulative of A.D.G.'s own testimony, and it resulted in the jury hearing the victim's version of events several times. In addition, Morgan argues, the mother's testimony included improper "other acts" evidence against Morgan, because her testimony suggested that Morgan had sexually assaulted the victim or another child previously. Morgan challenges specifically the mother's testimony that Morgan had told A.D.G., "It's been a long time since I've touched or felt hairy thighs like this," and A.D.G.'s statement to his mother that he thought "this" had happened before.

The Wisconsin Court of Appeals stated correctly that to succeed on his ineffective assistance claims, Morgan must show both that his counsel's performance was deficient and that he was prejudiced as a result. Dkt. 15-5, ¶ 23; *see also Harrington v. Richter*, 562 U.S. 86,

---

[1] Morgan did not challenge the nurse's testimony or stepfather's testimony in the Wisconsin Court of Appeals, and he does not develop any argument about that testimony now, so I will consider only the mother's statements and the videotaped interview.

104 (2011); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, Morgan must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. To demonstrate prejudice, Morgan must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 499 U.S. at 694.

The Wisconsin Court of Appeals did not address whether Morgan's counsel was deficient, because it concluded that Morgan had failed to show that he was prejudiced by admission of the hearsay evidence. The court of appeals' analysis and conclusion were reasonable. As the court of appeals stated, the cumulative and repetitious nature of the hearsay evidence did not prejudice Morgan because the A.D.G.'s live testimony, on its own, was detailed, compelling, and uncontradicted. A.D.G. testified in detail about the assault, including where he and Morgan were, what they were wearing, what Morgan said, and how Morgan touched him. A.D.G. also provided detailed testimony about the events following the assault, including when he told his mother about the assault. The state courts concluded that, even without the hearsay evidence, the jury would have found the victim to be persuasive.

The court of appeals' analysis was a reasonable application of *Strickland*. The victim's version of events was the only version presented at trial. This was not a case in which the jury had to decide whether to believe the version of events presented by the accuser or the version presented by the accused. If Morgan had presented an alternative version of events, it might have been prejudicial to present A.D.G.'s version through multiple witnesses. But here, Morgan did not present an alternative account, and Morgan did not even deny that the incident happened. During the police interview, which was played for the jury, Morgan agreed with some of A.D.G.'s account, including that he had touched A.D.G.'s legs, joked with him, and

6

talked with him about homosexuality. Morgan never denied the more serious allegations outright, stating that the incident could have happened and that the victim was a truthful person.

As for the mother's testimony that A.D.G. thought Morgan may have done "this" before, I agree with the court of appeals that these statements are too vague and ambiguous to have affected the outcome of trial. Morgan argues that the statements likely caused the jury to conclude that he had sexually assaulted a child before and gotten away with it. But as the court of appeals pointed out, it is equally plausible that A.D.G.'s reference to Morgan's "hairy thighs" comment and A.D.G.'s statement that Morgan may have done "this" before was A.D.G.'s way of telling his mother that he thought Morgan may have engaged in homosexual activity before. Regardless, in light of A.D.G.'s uncontradicted testimony about the sexual assault, Morgan was not prejudiced by these ambiguous comments.

In sum, the court of appeals' rejection of Morgan's ineffective assistance of counsel claims was not contrary to, or an unreasonable application of *Strickland*. Nor was it unreasonable in light of the evidence. Accordingly, Morgan has not shown that he is entitled to habeas relief. The only question remaining is whether to issue Morgan a certificate of appealability.

Under Rule 11 of the Rules Governing Section 2254 cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*,

13 529 U.S. 473, 484 (2000)). Although the rule allows me to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. Morgan has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue Morgan a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Ronald David Morgan's petition for a writ of habeas corpus under 28 U.S.C. § 2254, Dkt. 1, is DENIED, and this case is DISMISSED. The clerk of court is directed to enter judgment for respondent and close this case.

2. A certificate of appealability is DENIED. If Morgan wishes, he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered April 15, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

8